## 30319. MILLER et al. v. WELLS et al.

INGRAM, Justice.

This is an appeal from the grant of an interlocutory injunction in Cobb Superior Court arising from a dispute over whether the appellees have a vested right to use a strip of land, approximately 20 feet in width and 372 feet in length, which is shown on a subdivision plat to run northerly along the rear of lots 1, 2 and 3 from South Cobb Drive in Cobb County to the southwest corner of lot 4 owned by the appellees. The trial court overruled a motion to dismiss the complaint. However, after an evidentiary hearing, the trial court temporarily enjoined the appellants from obstructing the strip and from interfering with the appellees' use of the strip for ingress and egress to the rear of their lot.

While a word picture of the disputed strip of land and the lots owned by the parties might be adequate to reveal the resulting legal issues, any factual account of the case is best served by reproducing a copy of the plat of the subdivision and this will be done since it is included in the transcript of the evidence.

PLAT OF
# LEGEND PARK
## UNIT ONE
### LAND LOT 602-17TH.DISTRICT-2ND.SECTION
### COBB COUNTY, GEORGIA
### R.DAN LORD-SURVEYOR-REG.NO.1009
### MAY, 6, 1961          SCALE 1"=100'

SURVEYOR'S ACKNOWLEDGMENT:
This hereby certifies that this plat is true and correct and was prepared from a actual survey of the property made under my supervision on the ground.

By: R. Dan Ford
Registered Georgia Land Surveyor No 1009

OWNERS ACKNOWLEDGMENT:
The owner of the land shown on this plat and whose name is subscribed hereto, and who in person, or through a duly authorized agent acknowledges that this plat was made from a actual survey and dedicates to the use of the public forever all streets, alleys, parks water courses, drains, easements and public places thereon shown for the purposes and considerations therein expressed.

APPROVAL OF THE PLANNING BOARD OF COBB COUNTY, GEORGIA:
This plat has been submitted to and considered by the Planning Board of Cobb County, Georgia, and is approved by such Planning Board. Dated this 19 day of May, 1961.

By: _____, Chairman
By: _____, Secretary

APPROVAL OF THE COMMISSIONER OF ROADS AND REVENUES OF COBB COUNTY, GEORGIA:
This plat has been submitted to and considered by the Commissioner of Roads and Revenues of Cobb County, Georgia, and is approved subject to the Protective Covenants shown hereon. Dated this 19 day of May 1961

Commissioner of Roads and Revenues,
Cobb County, Georgia.

| CURVE DATA | | | | |
|---|---|---|---|---|
| CURVE No. | I | Z | D. | T | L |
| 1 | 51°04' | 191.00 | 30°00 | 91.24 | 170.22 |
| 2 | 36°20' | 286.48 | 20°00 | 94.00 | 181.67 |

PLAINTIFF'S EXHIBIT
D

In 1961, appellant J. E. Alverson was the owner and subdivider of this land in Land Lot 602, 17th District, 2d Section of Cobb County, and he caused it to be laid out and subdivided in five lots as Legend Park, Unit I, Block D, as shown on the recorded plat. The plat recites an express dedication to public use of all the streets, alleys, easements and public places shown thereon. The disputed strip of land involved in this litigation is the 20-foot strip lying on the west side of lots 1, 2 and 3 which extends from the north side of South Cobb Drive to the southwest corner of lot 4 which lies north of, and is contiguous to, lot 3 in the subdivision. This strip is designated as "reserved" on the plat and the critical question in the case is for whom was this strip of land reserved.

Appellants insist it is clear from the plat itself that the original owner and subdivider intended to reserve the strip to himself and appellees insist it is equally clear that the subdivider intended to reserve the strip as an alley for the use of the owners of lots 1, 2, 3 and 4 to have access to the rear of their lots. The plat itself shows that all of the lots in the subdivision have access to and front upon Ridge Road, the main public street providing access to South Cobb Drive.

The evidence shows that the original owner and subdivider, J. E. Alverson, built a dwelling on lot 3 in 1961 and lived there until he sold the house and lot in 1964 to the immediate predecessor in title to the present owner of lots 2 and 3, appellant Miller. Lot 4 was originally sold by the subdivider, appellant Alverson, to Joe C. Dalton in 1964 but no house was constructed on the property by him. The appellees purchased lot 4 from Mr. Dalton in 1971, built a home on the property and claim a right to use the reserved strip for access to South Cobb Drive from the rear of their lot by virtue of their reliance on the general scheme of the subdivision and the words of dedication on the plat. None of the various deeds to lots in the subdivision make specific mention of the reserved strip but are simply conveyances reciting metes and bounds descriptions and giving lot numbers by reference to the recorded plat of the subdivision.

The owners of lots 1, 2 and 3 enjoyed permissive use of the disputed strip from the original owner and subdivider

until 1971 when the subdivider, appellant Alverson, conveyed by quitclaim deed to appellant Miller for $1,000, that portion of the disputed strip adjoining lots 2 and 3, and, apparently, the owner of lot 1 also uses that portion of the strip adjoining his property as an entrance to South Cobb Drive. However, neither the present owners of lot 4 (the appellees) nor their predecessor in title, have ever used the disputed strip or been given permission to do so.

Appellant Alverson, the original owner and subdivider, testified that he built the first home in the subdivision and that he reserved the disputed strip so that he could drive from his carport out the back side of lot 3 to South Cobb Drive. He also testified that at the time he laid out the subdivision in 1961 there was a hedge (about four feet high) which divides lot 3 from lot 4 and separates the north end of the disputed strip from lot 4. Alverson also testified the disputed strip was never used by the public, but that it was graveled and that it curved into his carport driveway on lot 3 rather than extending to the south line of lot 4, as shown on the plat.

Appellant Miller, the present owner of lots 2 and 3, also testified the disputed strip did not run to the south boundary of lot 4 but curved to the carport driveway on lot 3. She testified that neither she nor her former husband (who owned the lot as her predecessor in title) placed any obstruction on the disputed strip, blocking access to it from lot 4 owned by the appellees, and that the only existing obstruction is the same hedgerow that was there in 1964.

Appellee Wells also testified that the disputed strip was blocked off at the corner of his lot (No. 4) by the hedge and he could not get from his lot onto the strip. He testified that, to his knowledge, the hedge was planted by appellant Miller's former husband, her immediate predecessor in title. Mr. Wells also testified that, from the plat itself and from his conversation with Mr. Joe Dalton before he bought lot 4 from him, he thought he would have full use of the disputed strip and would not have purchased his lot if he had known otherwise. Appellee Wells also testified that he had observed the owners of the other lots using the disputed strip but no one else. He also

related that there had been no change in the hedgerow obstruction from the time he contracted to buy his lot until the present and that the hedge was still there blocking his access to the strip.

We think the trial court correctly overruled the appellants' motion to dismiss the complaint. It stated a claim for relief and the legal issues presented by it cannot be determined solely as a matter of law. The designation of the disputed strip as "reserved" on the subdivision plat is insufficient by itself under the circumstances of this case to conclude that the owner-subdivider of the land intended to reserve the use of the strip only for himself. The strip could serve as an alley providing access from the rear of lots 1, 2, 3 and 4 of the subdivision to South Cobb Drive.

Of course, the addition of a few words, such as, "to grantor" after the word "reserved" on the original plat would have made it clear that no dedication of the presently disputed area was ever intended by the subdivider. However, the designation of this strip solely as "reserved" on the plat creates an ambiguity in view of the dimensions and location of the strip in relation to the lots in the subdivision.

In reaching this conclusion, we are not unmindful of good secondary authorities relied upon by appellants in their brief. Pindar's Georgia Real Estate Law, § 8-15, at p. 310, states that "merely leaving a strip of land between two [subdivision] lots does not create a street or alley, and the result is the same where the strip is marked 'reserved.'" Pindar relies on 26 CJS 445, § 23, where a holding in Cleveland v. Bergen Bldg. &c. Co., 55 A 117 (4) (N. J.) is noted. A part of the syllabus in that case is that: "Conveyances by the owners of lots, referring to two maps in one of which a street is laid out, and in the other of which a strip therein is marked 'reserved,' do not amount to a dedication of the strip to public use."

No Georgia case has been cited or found which is dispositive of the present issue as a matter of law. Therefore, in view of the ambiguity created by the plat, we believe the trial court correctly overruled the motion to dismiss and conducted an evidentiary hearing on the questions presented by the complaint.

Appellees rely on cases such as *Griffith v. C & E Builders,* 231 Ga. 255 (200 SE2d 874) (1973); *Campbell v. Brock,* 224 Ga. 16 (159 SE2d 409) (1968); *Owens Hardware Co. v. Walters,* 210 Ga. 321 (80 SE2d 285) (1954); and *Schreck v. Blun,* 131 Ga. 489 (62 SE 705) (1908). These cases state correct principles of law but are distinguishable on their facts from the present case. In each of these cases, the recorded plat designated either a street, road, alleyway, right of way, drive or access. In each instance a clear intent was shown to dedicate the land for use by others. The word "reserved" does not demand the conclusion that the subdivider intended to dedicate this strip for use by others as an alley. If the words "for access" or "for alley" had been added after the word "reserved," appellees would have a much stronger case for dedication of the strip under the above cases.

We cannot read "reserved" to mean "access" or imply as a matter of law that this strip was intended as an alley by the original owner and subdivider. Black's Law Dictionary (Rev. 4th Ed.) (1968), defines the word "reserve" as meaning "to keep back, to retain, to keep in store for future or special use, and to retain or hold over to a future time . . .," citing a federal tax case. "Reserved land" is defined, from a California case, as public land that has been withheld or kept back from sale or disposition. While these definitions are not controlling, it is obvious that all of them indicate that the word "reserved" indicates something that is withheld and not something that is granted. This language from the law conveys the same meaning as language used in recognized dictionaries, such as Webster's Third New International Dictionary (1971) where "reserve" is defined as meaning, inter alia, to keep back, retain, to make legal reservation of, withhold from the operation of a grant, agreement, or release.

In summary, the law does not demand a conclusion that the "reserved" strip of land shown on this plat was reserved solely for the subdivider or was reserved for the benefit of the lot owners whose lots adjoin the strip of land. Nor can we say the evidence demanded a decision for either side.

Ordinarily, the discretion of the trial court in

granting an interlocutory injunction will not be reversed on appeal if there is any evidence to support its judgment. However, the grant of this interlocutory injunction must be reversed because it effectively requires the removal of the hedgerow separating lot 4 from the disputed strip and would require appellants to provide access where none now exists. This is permanent relief exceeding the scope of an interlocutory injunction. A trial court can grant an interlocutory injunction to preserve the status quo but cannot make a final determination of the issues at the interlocutory hearing unless there is a consolidated hearing as authorized by Code Ann. § 81A-165 (a) (2). See *Ga. Loan &c. Co. v. Dyer,* 233 Ga. 957, 958 (213 SE2d 864) (1975).

*Judgment affirmed in part; reversed in part. All the Justices concur.*

ARGUED OCTOBER 7, 1975 — DECIDED OCTOBER 22, 1975.

*Holcomb & McDuff, Robert E. McDuff, Terry E. Willis,* for appellants.

*Smith, Robertson & Sparrow, George T. Smith,* for appellees.